

FILED

JAN 08 2015

Phil Lombardi, Clerk
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 15 CR 002 GKF |
| | ) | |
| Plaintiff, | ) | **INDICTMENT** |
| | ) | [COUNTS 1 and 2: |
| v. | ) | 18 U.S.C. § 1341 – Mail Fraud; |
| | ) | Forfeiture Allegation: |
| KELLY VERD NICHOLS, | ) | 18 U.S.C. § 981(a)(1)(C) and |
| | ) | 28 U.S.C. § 2461(c) - Mail Fraud |
| Defendant. | ) | Forfeiture; |
| | ) | COUNTS 3 through 6: |
| | ) | 18 U.S.C. § 1957(a) – |
| | ) | Unlawful Monetary Transactions; |
| | ) | Forfeiture Allegation: 18 U.S.C. |
| | ) | § 982(a)(1) – Money Laundering |
| | ) | Forfeiture] |

**THE GRAND JURY CHARGES:**

### COUNTS ONE AND TWO
### [18 U.S.C. § 1341]

#### Introduction

At all times relevant to this Indictment:

1.     The defendant, **KELLY VERD NICHOLS** ("**NICHOLS**"), and his wife were the owners of International Marketing Consultants, LLC, an Oklahoma limited liability company, and International Marketing Consultants, Inc., an Oklahoma corporation.   This Indictment will refer to the companies jointly as "IMC," unless otherwise specified.

2.     **NICHOLS** was the chief executive officer of IMC.  At times, **NICHOLS** conducted the business of IMC under the trade name of CoMission Media.  **NICHOLS** maintained IMC's offices in the Northern District of Oklahoma.

3.    **NICHOLS**, through IMC, engaged in the business of marketing and print media.  In particular **NICHOLS**, through IMC, provided services of printing, storing, selling and distributing written materials for other businesses and organizations.

4.    **NICHOLS** maintained bank accounts, numbers ****9564 and ****8467, for IMC at Bank of America, N.A. ("Bank of America" or "BOA").  **NICHOLS** and his wife were the only authorized signers on those accounts.

5.    In or about 2006, Frank Broyles, the noted athletic director and former football coach of the University of Arkansas, founded the Frank and Barbara Broyles Legacy Foundation ("the Broyles Foundation") as a charitable organization to enhance the care of persons suffering from Alzheimer's disease.

6.    The Broyles Foundation was based in Fayetteville, Arkansas, and was an affiliate of the University of Arkansas Foundation, Inc. ("the UofA Foundation").  The UofA Foundation handled financial transactions on behalf of the Broyles Foundation.

7.    A core activity of the Broyles Foundation was the publication and distribution of a booklet which provided guidance and encouragement to persons giving care to Alzheimer's patients.  Because the booklet was developed by Frank Broyles, it was entitled "Coach Broyles' Playbook for Alzheimer's Caregivers" and was commonly referred to as "the Playbook."

8.    In or about 2006, the Broyles Foundation arranged for the publication and free distribution of the first 100,000 copies of the Playbooks to the public in Arkansas, by whom the booklets were well received.

2

9.     Beginning in or about 2007, **NICHOLS** convinced the Broyles Foundation that IMC could produce the Playbooks more economically by having them printed in China.  Consequently, from in or about 2007 to in or about 2009, the Broyles Foundation ordered and paid for approximately 1,100,000 copies of the Playbook from IMC, which IMC delivered and helped to distribute nationally.  Because of quality issues with some of these copies, however, not all were distributed.

10.     In or about late 2009, the Broyles Foundation ordered 500,000 new copies of the Playbook from IMC ("the late 2009 order") to distribute instead of the inferior copies delivered by IMC earlier in 2009.  The total price of the late 2009 order was $445,000, payable in the following installments:  30% upon printing, 30% upon shipping from China, 30% upon arriving in the United States, and 10% upon United States delivery.

### The Scheme to Defraud

11.     From on or about December 14, 2009, to the date of this Indictment, **NICHOLS** devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises in the following manner ("the Scheme"):

12.     It was part of the Scheme that, in or about December 2009 and May 2010, **NICHOLS** would cause IMC to submit invoices to the Broyles Foundation, for payment of the late 2009 order for the Playbooks, which would contain material false and fraudulent pretenses, representations, and promises about the status of the printing, shipping, and delivery of the Playbooks.  In particular, **NICHOLS** caused the IMC

3

invoices to materially falsely and fraudulently represent to the Broyles Foundation that the Playbooks for the late 2009 order were printed when, in fact, they were never printed, and that those Playbooks were shipped when, in fact, they were never shipped from China, as **NICHOLS** then well knew.

13.     It was further part of the Scheme that **NICHOLS** would cause the Broyles Foundation and the UofA Foundation to send checks, in payment of IMC's materially false and fraudulent invoices for the late 2009 order, to IMC in the Northern District of Oklahoma by means of the United States Postal Service and by Federal Express, which was a commercial interstate carrier.

14.     It was further part of the Scheme that **NICHOLS** would conceal from the Broyles Foundation and the UofA Foundation the fact that the Playbooks were not printed and shipped from China according to IMC's invoices for the late 2009 order and **NICHOLS** would make, and cause IMC to make, material false and fraudulent pretenses, representations, and promises about the status of the late 2009 order, thereby lulling both foundations about the true status of the late 2009 order and the usage of their funds.

## The Mailings

15.     On or about the dates stated below, for the purpose of executing the Scheme and attempting so to do, **NICHOLS** knowingly caused payments from the Broyles Foundation and the UofA Foundation to be delivered to IMC in the Northern District of Oklahoma, by the means designated below, according to the directions thereon:

4

| Count | Date | Means of Delivery | Payment Delivered |
|-------|------|-------------------|-------------------|
| One | 01/21/10 | United States Postal Service | The UofA Foundation check number 9832, dated 01/19/10, payable to IMC in the amount of $133,500.00 |
| Two | 06/11/10 | Federal Express | The UofA Foundation check number 17157, dated 06/10/10, payable to IMC in the amount of $133,500.00 |

All in violation of Title 18, United States Code, Section 1341.

## MAIL FRAUD FORFEITURE ALLEGATION
### [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

16.     The allegations contained in Counts One and Two of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

17.     Upon conviction of the mail fraud scheme alleged in Counts One and Two of this Indictment, as part of his sentence, the defendant, **KELLY VERD NICHOLS**, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such mail fraud scheme.  A criminal forfeiture money judgment shall also be entered in a sum of money in an amount of at least $267,000 representing proceeds of the mail fraud scheme.

18.     Pursuant to Title 21, United States Code, Section 853(p), as adopted by Title 28, United States Code, Section 2461(c), the defendant shall forfeit substitute property, up to the value of the property described above if, by any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

## COUNTS THREE THROUGH SIX
### [18 U.S.C. § 1957(a)]

19.    The allegations of Counts One and Two of this Indictment are incorporated in these counts by reference.

20.    On or about the dates stated below, in the Northern District of Oklahoma and elsewhere, the defendant, **KELLY VERD NICHOLS**, knowingly engaged in the following monetary transactions in criminally derived property, of a value greater than $10,000 and which was derived from specified unlawful activity, that is, mail fraud, a violation of Title 18, United States Code, Section 1341:

| Count | Date | Monetary Transaction | Amount |
|-------|------|----------------------|--------|
| Three | 01/21/10 | Deposit of UofA Foundation check number 9832 into BOA account number ****9564 | $133,500.00 |
| Four | 01/25/10 | Transfer of funds from IMC account number ****9564 at BOA to IMC account number ****8467 at BOA | $25,000.00 |
| Five | 06/14/10 | Deposit of UofA Foundation check number 17157 into BOA account number ****9564 | $133,500.00 |
| Six | 06/21/10 to 07/26/10 | Transfer of funds from IMC account number ****9564 at BOA to the bank account of the Broyles Foundation | $31,528.32 |

21.    Bank of America was a financial institution, the depository accounts of which were insured by the Federal Deposit Insurance Corporation, which was engaged in, and the activities of which affected, interstate and foreign commerce in any way and degree.

All in violation of Title 18, United States Code, Section 1957(a).

7

## MONEY LAUNDERING FORFEITURE ALLEGATION
### [18 U.S.C. § 982(a)(1)]

22.    The allegations contained in Counts One through Six of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 982(a)(1).

23.    Upon conviction of the money laundering offenses alleged in Counts Three through Six of this Indictment, as part of his sentence, the defendant, **KELLY VERD NICHOLS,** shall forfeit to the United States any property, real or personal, involved in such offenses, and any property traceable to such property.  A criminal forfeiture money judgment shall also be entered in a sum of money in an amount of at least $267,000 representing money involved in the money laundering offenses.

24.    Pursuant to Title 21, United States Code, Section 853(p), as adopted by Title 18, United States Code, Section 982(b), the defendant shall forfeit substitute property, up to the value of the property described above if, by any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

8

All pursuant to Title 18, United States Code, Sections 982(a)(1).

DANNY C. WILLIAMS, SR.                          A TRUE BILL
UNITED STATES ATTORNEY


_/s/ Grand Jury Foreperson_
KEVIN C. LEITCH                                 Grand Jury Foreperson
Assistant United States Attorney

9